## EDWARD SWEAT *v.* THE STATE.

1. NEW TRIAL. — The defendant is entitled to be present in court when his motion for a new trial or in arrest of judgment is heard and determined; but when a disregard of this right is relied upon as error, the record must, in some authentic manner, affirmatively show the fact that he was absent when such action was taken in his case, and that the attention of the court was called to that fact.   Note the distinctions taken between this case and *Gibson* v. *The State*, 3 Texas Ct. App. 438.

2. MARKS AND BRANDS — VARIANCE. — When the other circumstances of description correspond, if the witnesses differ as to how the characters alleged by the indictment as the brand are found on the animal, this will not be a material variance between the *allegata* and the *probata*, if they agree as to the locality and general conformation of the disputed characters.

3. SAME — CASE STATED. — Indictment described a stolen animal by age, sex, ownership, and ear-marks, and also by certain characters, as the brands on the shoulder, loin, and hip. The configuration of one of the brands given by the witnesses differed somewhat from that delineated in the indictment, but they coincided with the indictment as to the locality of the brand, and there was no conflict as to the other descriptive averments. *Held*, that, in this state of case, the discrepancy as to the brand was not a material variance, and the rule requiring descriptive allegations, though superfluous, to be proved as made has been substantially complied with.

APPEAL from the District Court of McLennan. Tried below before the Hon. L. C. ALEXANDER.

All material facts appear in the opinion.

*Herring, Anderson & Kelley*, for the appellant.

*George McCormick*, Assistant Attorney-General, for the State.

WINKLER, J.  The appellant was convicted of theft of one three-year-old heifer, neat cattle, and his punishment assessed at confinement in the state penitentiary for five years.

Two separate assignments of error are embodied in the transcript, to wit: 1. One alleging error in overruling the defendant's motion for a new trial.  2. The other is the following, called an additional assignment of errors, to wit: "(1) The court erred in hearing and determining defendant's motion for a new trial while he was absent in jail, and only appeared by his attorneys, not being present in person, and not having, in any manner, waived his presence in court when said motion was heard and determined.  (2) There is a fatal variance between the evidence and the

description of the heifer alleged to have been stolen, in the indictment.''

We have not been enabled to see, from anything shown by the record, that there was any error in the action of the court in overruling the motion for a new trial. This is, apparently, conceded by appellant's counsel. In their brief they say: "As the case is presented by the record, we rely mainly, for reversal, upon the additional assignment of error, which embraces two propositions: (1) The motion for a new trial was heard and determined in the absence of appellant; and (2), there is a fatal variance between the evidence and the description of the heifer in the indictment.''

In support of the first proposition we are referred to the following authorities: *Hill* v. *The State*, 41 Texas, 255, and *Gibson* v. *The State*, 3 Texas Ct. App. 437. In the former case it was held that, under the circumstances of the case, it was proper to enter a final judgment of conviction and prepare a statement of facts *nunc pro tunc*, and the court said, further, that " the trial may well be held incomplete until all the issues of law, as well as of fact, have been determined and the final judgment entered. Until this is done no appeal can be prosecuted.'' But the opinion is silent upon the question here raised, as to whether the motion for a new trial can legally be heard in the absence of the accused or not.

In Gibson's case it was shown by the record that the attention of the court below was called to the fact that the accused was not in court when his motion for a new trial was heard. This fact appeared affirmatively in the record, not only in the assignment of errors, which would not be sufficient if standing alone, but it also appeared from the statement of facts, which settled the question that the attention of the court was directed to it. In the present case it is not shown anywhere that the attention of the court below was ever called to the fact; nor is it made to appear, except

inferentially, that the accused was not, in fact, present in court when the motion for a new trial was determined.

This court had occasion to consider this identical question in a more recent case than Gibson's, at the last Austin term, when it was held that the objection here raised came too late after the trial had concluded, without the subject having been mentioned in the court below. The legal presumption is, in the absence of anything being shown to the contrary, that the court and its officers did their duty in accordance with law.

The entry, it is true, does not state in so many words either that the accused was present or not present when the motion was heard; it merely recites that he appeared by attorney. Now, we may conclude either that the entry was carelessly or inadvertently made, or that it was not deemed a matter of any moment that the record should show whether he was present or absent; and we might indulge the presumption that his right to be present had been waived, inasmuch as the law gives to one accused the privilege of waiving his right to be present. This he had the right and privilege, under the law, of doing, it being provided that "the defendant to a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury, when he has pleaded not guilty."

It is not questioned that a trial is not complete until, as was stated in Hill's case, above cited, "all the issues of law as well as of fact have been determined;" nor is it questioned that a defendant in a criminal prosecution is entitled to be present at the hearing of a motion for a new trial or in arrest of jugdment, if he so desires, as was held in Gibson's case, cited by counsel; but, to entitle him to a reversal of a judgment of conviction, it must be made to appear from the record, affirmatively, that he desired to exercise the right of being present, and that this was denied him, in the court which tried the case. It is but reasonable that,

if the court should be about to commit an error of this character, through inadvertence or otherwise, his attention should be called to it, and an opportunity afforded him to not only give the accused all his rights under the law of his case, but also to place himself right upon the record.

The assignment that there is a fatal variance between the evidence and the description given of the animal charged to have been stolen, in the indictment, is, we think, not well taken.  True, there was some discrepancy between the statements of the witnesses as to the different letters, figures, and characters used in the several brands upon the heifer; yet we are of opinion that the evidence showed that the essential description set out in the indictment was met and sustained by the proofs.

The animal is described in the indictment by its age, sex, brands, and ear-marks, thus : " One three-year-old heifer, neat cattle, then and there branded thus (here a character is made which, for reference hereafter, we will call the first one mentioned) on the left shoulder, and was branded thus (and here appears the second character mentioned) on the left loin, and " d 5 " on left hip, and marked with an under-slope in its left ear, and with a crop and over-half-crop in right ear."

It is conceded that the pleader took upon himself a difficult task, by describing the animal with greater particularity than necessary; yet, this minute description being stated in the indictment, in order to identify the animal, the State was held to proof of the description of identity as set out in the indictment.  The rule is thus laid down by Mr. Greenleaf, volume 1, section 65 : " When a person or thing necessary to be mentioned in an indictment is described with unnecessrry particularity, all the circumstances of description must be proved; for they are all made essential to the identity."

Still, stringent as the rule is, we are of opinion the evi-

dence meets it, at least substantially, as the following extracts will show. One witness says: (I) "have been engaged in the stock business all my life. I know the heifer described in the indictment; know her by her flesh-marks, and also by the marks and brands;" and from the ownership, and he traces the animal from McCulloch County to McLennan, where she was found, as shown by other witnesses, in the possession of the accused; and he says further: "When we found the heifer in the herd in McLennan County, in a pasture near Waco, she had been freshly branded with the letters and figures 'V. O. 2.' The heifer was three years old, and marked with an under-slope in the left ear, and with a crop and over-half-crop in the right ear, and branded thus (here is placed a character resembling, in fact almost identical with, the first character mentioned in the indictment, which, he says, was on the left shoulder), and road-branded thus, ' 9,' on left loin, and with the letters and figures ' d 5 ' on left hip."

The inspector says: " I took down the marks and brands of the cattle, and the sex of each, and recorded them in my record-book. I find the marks and brand of the heifer described in the indictment here recorded. This heifer was in the lot of 29 which the defendant drove to Waco. I saw the heifer in his possession in McLennan County." Another witness speaks of the brand " V. O. 2 " as having been freshly put on; and another speaks of the brand on the left loin, the place of the second character in the indictment.

The best description we are able to make of this second character, mentioned in the indictment as upon the *left loin*, is that it resembles a back-handed letter "e," as it appears in the indictment. The pleader does not call it either a letter or a figure, but attempts to make the character. One witness calls it a figure "9," and one a "q," each placing it on the left loin. These discrepancies might be

reconciled, if it was material to the conviction, in this man-
ner : The character in the indictment, as we have seen, is
not called a letter, but resembles the small writing-letter
" e." Now, it is most likely that the grand jury obtained
the description of this brand, which both the indictment and
the witnesses place on the *left loin* of the heifer, from some
witness before them. This, perhaps, was given by the
foreman to the county attorney, and by him inserted in the
body of an indictment, prepared by him from notes of the
evidence before the grand jury, and furnished to him by
that body through its foreman. Now, by an elongation of
the lower part of the character, leaving off a small portion
of the curve at the bottom, or changing the rising portion
of the lower turn, very little alteration would be required
to give it the appearance of a " 9 " or a " q ;" and bearing
in mind the number of times the representation of this
character would be required to be written, and the different
hands through which it must necessarily have passed from
the time the witnesses testified before the grand jury. And
so as to the evidence given on the trial ; from that time
until the transcript appears here with a certified copy of
the indictment, and a like copy of the statement of facts,
the discrepancies, as they now appear, may have occurred
in this way.

However this may be, we are of opinion, taking into
consideration the whole descriptive averment in the indict-
ment and the whole of the evidence, that the one is sub-
stantiated by the other ; and bearing in mind that the road-
brand " V. O. 2 " is shown to have been recently placed
on the heifer, and, therefore, not essential to the identifica-
tion of the property as being the property of the alleged
owner, and that the description set out in the indictment is
made out by precisely corresponding evidence in many par-
ticulars, that the variances indicated are not of sufficient
importance to vitiate the verdict. The requirements of the

rule above set out have been substantially met, in that the descriptive averments in the indictment have been so met in the evidence as that one identifies the other. The evidence does not contradict the descriptive averments in the indictment — as, by proving a different age or sex from that stated by the pleader. The spirit and intent of the rule has been recognized both by the Supreme Court of the state and by this court. *Hill* v. *The State*, 41 Texas, 253; *Rose* v. *The State*, 1 Texas Ct. App. 400; *Courtney* v. *The State*, 3 Texas Ct. App. 259.

Still, it should not be so rigidly applied as that it would often defeat the ends of justice. When the other circumstances of description correspond, if there be a disagreement between witnesses as to how the characters mentioned in the indictment as the brand are found, this will not be fatal variance between the *allegata* and the *probata*, if they agree as to the general conformation and locality of the disputed characters.

One other proposition requires to be noticed. It is urged, on behalf of the appellant, that the evidence indispensable to the conviction is obtained from an accomplice, or accomplices, in the crime charged against the appellant, and is without sufficient legal corroboration to warrant a conviction. We are of opinion this question was properly submitted to the jury by the charge of the court, and that the evidence on this point was amply sufficient to meet the demands of the law. *Jones* v. *The State*, 3 Texas Ct. App. 525; *Davis* v. *The State*, 2 Texas Ct. App. 588; *Irvin* v. *The State*, 1 Texas Ct. App. 301.

After a careful consideration of the whole case as presented by the record, with the aid of able arguments on both sides, we are of opinion that the appellant has been fairly tried, upon a sufficient indictment; that the charge to the jury was an able and impartial exposition of the law applicable to the case; and that the evidence was amply

sufficient to support the verdict and judgment; and that the judgment be affirmed.

*Affirmed.*